Alan CHARNES, Executive Director,
Department of Revenue, State of
Colorado, Petitioner,

v.

NORWEST LEASING, INC.,
Respondent.

No. 88SC524.

Supreme Court of Colorado,
En Banc.

Feb. 12, 1990.

As Modified March 12, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Steven M. Bush, Asst. Atty. Gen., Denver, for petitioner.

Faegre & Benson, John D. Shively, Jo Frances Walsh and Mary C. Kloepfer, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Norwest Leasing, Inc. v. Charnes,* 767 P.2d 775 (Colo.App.1988). The court of appeals held that Norwest substantially complied with subsection 39–26–117(1)(b), 16B C.R.S. (1982), by filing with the Jefferson County Clerk and Recorder a document which described property leased by Norwest to F.H. Markets. *Id.* at 776. We reverse and remand with direction.

I.

In 1984 respondent Norwest Leasing, Inc. (Norwest) leased equipment to F.H. Markets, Inc., which did business under the name "Shoppin' Bag Warehouse Foods." The lease provided that title to the equipment would remain in the lessor at all times. On August 16, 1984, Norwest attempted to comply with subsection 39–26–

117(1)(b) by filing a document[1] with the Jefferson County Clerk and Recorder describing the property which was the subject of the lease. The document stated that "[t]his transaction is intended to be a true lease and not a security transaction and the filing of this financing statement is not an admission that the transaction is other than a true lease." The Colorado Department of Revenue (the Department) seized Norwest's property in late November 1984 to satisfy a tax lien the Department claimed to have against F.H. Markets. Norwest brought this action for an injunction to prevent the Department from disposing of the property and for damages. On January 4, 1985, Norwest and the Department entered into a stipulation in which Norwest agreed to post a bond for $123,435.42, which is the maximum amount of the Department's claimed lien against the property. In return, the Department agreed to release its lien.

Both parties moved for summary judgment. The trial court concluded that Norwest's document substantially complied with subsection 39–26–117(1)(b), which identifies conditions a property owner must meet to exempt its property from the lien the Department sought to enforce in this case.[2] The court of appeals affirmed the trial court's holding that Norwest's property was exempt from the tax lien because of Norwest's substantial compliance with subsection 39–26–117(1)(b).

## II.

Subsection 39–26–117(1)(b) creates an exemption to the otherwise superior tax lien authorized by subsection 39–26–117(1)(a).

The first sentence of subsection 39–26–117(1)(b) provides that:

> The real or personal property of an owner who has made a bona fide lease to a retailer shall be exempt from the lien created in paragraph (a) of this subsection (1) if such property can be reasonably identified from the lease description and if the lessee is given no right to become the owner of the property leased.

The second sentence of subsection 39–26–117(1)(b) provides that:

> This exemption shall be effective from the date of the execution of the lease if the lease is recorded with the county clerk and recorder of the county where the property is located or based or a memorandum of the lease is filed with the department of revenue on such forms as may be prescribed by said department within ten days after the execution of the lease at a cost for such filing of two dollars and fifty cents per document.

Norwest argues that its filing of the document substantially complied with the second sentence of subsection 39–26–117(1)(b), and therefore its property was exempt from the Department's tax lien. The Department argues that we must strictly construe the second sentence of subsection 39–26–117(1)(b) to require the property owner to file either the lease or the memorandum form prescribed by the Department. Norwest further argues that it is entitled to claim the exemption under the first sentence of subsection 39–26–117(1)(b), and therefore the only effect of its failure to comply with the second sentence of subsection 39–26–117(1)(b) would be to make the exemption prospective from the date Norwest filed its document.[3] The

---

1. Norwest filed a standard form Uniform Commercial Code (UCC) financing statement but contends that the document is not really a financing statement because it contains. *See* part II.B. of this opinion. We refer to the document filed by Norwest as the "document."

2. The Emergency Retail Sales Tax Act of 1935, §§ 39–26–101 to 39–26–211, 16B C.R.S. (1982 & Supp.1989) (the Sales Tax Act), imposes a sales and use tax on certain property and services identified in § 39–26–104. The parties do not dispute that the tax applied in this case. Subsection 39–26–117(1)(a) states that "[t]he tax im-

posed by this part 1 shall be a first and prior lien upon the goods and business fixtures of or used by any retailer under lease, title retaining contract, or other contract arrangement, excepting stock of goods sold or for sale in the ordinary course of business, and shall take precedence on all such property over other liens or claims of whatsoever kind or nature." Subsection 39–26–117(1)(b) creates the exemption from the lien that is the subject of this case.

3. Norwest argues that the only effect of a lessor's compliance with the second sentence of § 39–26–117(1)(b) is to make an established ex-

Department contends that Norwest is not entitled to claim the exemption under the first sentence of subsection 39–26–117(1)(b) because the document Norwest filed did not satisfy that subsection's requirements.[4]

To decide these issues we must interpret subsection 39–26–117(1)(b) to give effect to the intent of the General Assembly. *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo. 1987). "To discern legislative intent, we look primarily to the language of the statute itself and then give effect to these statutory terms in accordance with their commonly accepted meaning." *Id.; see also State Dep't of Revenue v. Adolph Coors Co.*, 724 P.2d 1341, 1345 (Colo.1986). In *ITT Diversified Credit Corp. v. Couch*, 669 P.2d 1355, 1362 (Colo.1983), we relied on the language of the Sales Tax Act to hold that the legislature's omission of the words "in the ordinary course of business" from other provisions of the Act indicated that the exemption from the lien created in subsection 39–26–117(1)(a) "protects only the retail customers of the taxpayer who purchased the goods from the retailer's inventory in the ordinary course of business." In this case we must also determine the issues based on the language and the legislative purpose of subsection 39–26–117(1)(b).

### A.

■ Norwest's first argument is that it is entitled to claim the exemption authorized by subsection 39–26–117(1)(b) from the date of the lease because Norwest substantially complied with the second sentence of that subsection by filing the document. We disagree.

We have approved of a rule of substantial compliance with a statute when such a rule serves the purposes of the statute. *See People v. Trancoso*, 776 P.2d 374, 379 (Colo.1989). In *Trancoso* we noted that we have liberally construed the Uniform Man-

datory Disposition of Detainers Act, §§ 16–14–101 to 16–14–108, 8A C.R.S. (1986), to hold that in appropriate circumstances substantial compliance with the Act's requirements is sufficient to invoke a prisoner's rights. *Id.; see also People v. Campbell*, 742 P.2d 302, 306–08 (Colo.1987). In some instances, however, the legislative purpose of a statute requires that the parties strictly comply with its provisions. In *Coors*, 724 P.2d at 1345, we held that returnable beer kegs qualified as "containers" exempt from the sales and use tax under subsections 39–26–102(20)(a) and 39–26–203(1)(f)(I). We based our decision on the fact that the applicable statutory phrase "container, label, or the furnished shipping case" contained no resale restriction. *Id.* We stated that "one cannot restrict by judicial decision a provision that the General Assembly has left unrestricted," and that "we cannot by construction amend the statute." *Id.* The same principle guided our statement in *ITT Diversified* that "[b]efore a statute creating a lien in favor of the state for unpaid sales taxes will be construed as giving a lien priority over a mortgage, security interest, or other contractual lien which was perfected at the time the lien came into existence, the legislative intent that such priority be given must clearly appear from the language of the statute." 669 P.2d at 1361. We have required either substantial compliance or strict compliance with statutes in order to fulfill our "duty to ascertain the legislative intent and give effect to such intent wherever possible." *Id.; see also Colorado Dep't. of Social Servs. v. Department of Health and Human Servs.*, 558 F.Supp. 337, 351 (D.Colo.1983) (recognizing the "maxim that statutes granting exceptions from clearly articulated public policy obligations should be construed narrowly").

The legislative purpose of subsection 39–26–117(1)(b) is to require property owners to reliably inform the Department of leased

---

emption retroactive to the date of the execution of the lease.

**4.** Norwest argues that if it is not entitled to the exemption then we must address whether the Department's seizure of its property violated the due process and just compensation guarantees

of the United States and Colorado Constitutions. Norwest, however, did not submit a cross-petition for certiorari containing this issue, and therefore we are not bound to address it. *See* C.A.R. 53(a)(1), 7B C.R.S. (Supp.1989).

property which is exempt from the tax lien authorized by subsection 39–26–117(1)(a). We would frustrate that legislative purpose were we to hold that substantial compliance with the second sentence of subsection 39–26–117(1)(b) makes the exemption effective from the date of the lease. Strict compliance with the second sentence of subsection 39–26–117(1)(b) is necessary to ensure that the Department will be able to assess whether the lease meets the requirements for exemption outlined in the first sentence of subsection 39–26–117(1)(b).

Our conclusion on this point is supported by the legislature's 1977 amendment to the second sentence of subsection 39–26–117(1)(b). Prior to 1977 that sentence provided that "[t]his exemption shall be effective from the date of the execution of the lease provided the lease *or a memorandum thereof* is *filed or* recorded with the county clerk and recorder of the county where the property is located or based" (emphasis indicates language deleted by 1977 amendment). *See* § 39–26–117(1)(b), 16 C.R.S. (1974); 1977 Colo.Sess.Laws 1803. Had Norwest filed its document prior to the 1977 amendment it would have been in compliance with the second sentence of subsection 39–26–117(1)(b). In 1977 the legislature amended the sentence to provide: "This exemption shall be effective from the date of the execution of the lease provided the lease is recorded with the county clerk and recorder of the county where the property is located or based *or a memorandum of the lease is filed with the Department of Revenue on such forms as may be prescribed by said department* ..." (emphasis indicates added language). 1977 Colo.Sess.Laws 1803. Thus the legislature amended the subsection to require the property owner to file

the lease itself, and not a memorandum of the lease, in order to make the exemption effective from the date of the lease. The 1977 amendment demonstrates that the legislature intended to eliminate methods of substantial compliance, including the method of compliance upon which Norwest relied. *See People v. Hale*, 654 P.2d 849, 851 (Colo.1982) ("There is a presumption that when a statute is amended there is an intent to change the law.").[5]

Because Norwest did not comply with the second sentence of subsection 39–26–117(1)(b) it did not succeed in making its claimed exemption effective from the date of the lease.

## B.

■ Norwest argues that if it did not comply with the second sentence of subsection 39–26–117(1)(b), the effect of its failure to comply is to make the exemption prospective from the date its document was filed. Norwest argues that it still qualifies for the exemption because, under the first sentence of subsection 39–26–117(1)(b), its property can be reasonably identified from the lease description, and the lessee was given no right to become the owner of the property leased. § 39–26–117(1)(b). In other words, Norwest argues that the first sentence of subsection 39–26–117(1)(b) specifies the prerequisites to the applicability of the exemption, and that the second sentence of subsection 39–26–117(1)(b) merely identifies a means by which property owners can make the exemption retroactive to the date of the execution of the lease. We disagree.

The clear purpose of subsection 39–26–117(1)(b) is to require owners of leased property to reliably inform the Department

**5.** Norwest argues that its document was sufficient because it contained more information than the Department's memorandum form. However, the document failed to alert the Department to the only relevant information with respect to § 39–26–117(1)(a): whether the lease gave the lessee the right to become the owner of the property. *See* part II.B. of this opinion.

Norwest also argues that the Department's memorandum form does not require the property owner to disclose whether the lease contains a purchase option. The Department argues that it only accepts memorandum forms which indicate whether a lease contains a purchase option. Regardless of the conditions under which the Department accepts its own form, Norwest could have ensured its compliance with the statute by submitting the Department's form to the Department. The Department's acceptance of the form would have estopped it from arguing that Norwest did not comply with § 39–26–117(1)(b).

of the property covered by the lease, and whether under the lease the lessee may acquire title to the property. If the documents filed by the property owner did not clearly identify the property and indicate whether the lessee can become the owner of the property, the Department would be forced to conduct an investigation to determine the contents of the lease. The legislature enacted subsection 39–26–117(1)(b) to save the Department from this inconvenience. In order to establish the exemption created by subsection 39–26–117(1)(b), therefore, the "lease description" referred to in the first sentence of that subsection must reasonably identify the property and must indicate whether the lease gives the lessee the right to become the owner of the property.

Our approval of Norwest's interpretation of the first sentence of subsection 39–26–117(1)(b) would undermine the purpose of that subsection. If we were to adopt Norwest's position, a property owner subjected to a tax lien authorized by subsection 39–26–117(1)(a) could claim the exemption by filing nothing more than a description of the property. The property owner would not have to indicate whether the lease allows the lessee to become the owner of the property. This would force the Department to either conduct an investigation to determine the contents of the lease before deciding whether to impose a tax lien, or bring an action without any knowledge of whether the transaction described in the lease was exempt under subsection 39–26–117(1)(b). The statute is designed to give the Department notice of the contents of leases so that the Department will only have to examine the lessor's filing to determine whether the exemption applies. This purpose would be frustrated by Norwest's interpretation of the first sentence of subsection 39–26–117(1)(b).

In this case the documents Norwest filed did not specify that the lessee of the property had no right to become the owner of the property. The documents filed by Norwest stated that "[t]his transaction is intended to be a true lease and not a security transaction." The Department correctly points out that there is no legal significance to the term "true lease." Labeling an agreement as a "true lease" does not describe whether the lessee of the property has a right under the agreement to become the owner of the property. There are other shortcomings in the document recorded by Norwest. The document is a standard form UCC financing statement, which is designed for use by secured parties to record their security interest in property held by a debtor. *See* 2 J. White & R. Summers, *Uniform Commercial Code* § 24–18, at 369 (3d ed. 1988). Both the standard form language and language added on the form by Norwest refer to the document as a financing statement. The document identifies Norwest as the "secured party." The language referred to by Norwest to demonstrate that the lessee had no right to become the owner of the property merely states that the transaction is "intended" to be a true lease. This statement of what the parties intended did not inform the Department of whether the actual lease provisions allowed the lessee to become the owner of the property. Finally, it appears that the document was recorded in the UCC records in the clerk's office, where financing statements and security agreements are normally recorded, and was not recorded in the real estate records of the clerk's office.[6]

We conclude that Norwest has not complied with either the first or second sentence of subsection 39–26–117(1)(b), and therefore Norwest cannot claim an exemption from the Department's tax lien under that subsection. The judgment of the court of appeals is reversed, and the case is remanded to the court of appeals with direction to remand the case to the trial court for consideration of the constitutionality of the statute.

---

6. Counsel for Norwest stated during oral argument that "the document was filed improperly with the UCC documents." The record contains an affidavit from the Jefferson County Clerk and Recorder which states that the document "was recorded in the U.C.C. files but was not recorded in the real estate records." The record does not indicate who was responsible for filing the document with the UCC records.

ERICKSON, J., dissents.

ROVIRA and LOHR, JJ., join in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, both the district court and the court of appeals correctly held that Norwest substantially complied with the requirements of section 39–26–117(1)(b), 16B C.R.S. (1982) and that Norwest's property is exempt from the tax lien imposed by section 39–26–117(1)(a). *Norwest Leasing, Inc. v. Charnes,* 767 P.2d 775 (Colo.App.1988). The district court, in granting summary judgment for Norwest, concluded that the filing of a financing statement, a legal description of the property and a schedule of the leased property substantially complied with and was sufficient to carry out and comply with the intent of section 39–26–117(1)(b).

A rule of substantial compliance should be applied to avoid an unjust and unfair result when the terms of a statute have been substantially carried out resulting in compliance with the reasonable objectives and purposes of the statute. *Jones v. Short,* 696 P.2d 665, 667 (Alaska 1985); *Superior/Ideal, Inc. v. Board of Review,* 419 N.W.2d 405, 407 (Iowa 1988); *In re Estate of Rudd,* 140 Mont. 170, 177, 369 P.2d 526, 530 (1962). The facts in each particular case provide the basis for determining whether there has been substantial compliance. *Trussell v. Fish,* 202 Ark. 956, 960, 154 S.W.2d 587, 590 (1941).

The majority notes that the purpose of section 39–26–117 is to facilitate the collection of unpaid sales taxes by providing the state with a lien on property leased by a retailer in the amount of the unpaid taxes and by giving the lien a first priority over other interests in the property. However, the statute also reflects a legislative intent to permit a lessor who has "made a bona fide lease to a retailer" to obtain relief from the state's lien if the leased property can be reasonably identified from the lease description and the lease does not grant the lessee a right to purchase the property. *See* § 39–26–117(1)(b). The Department does not contest the sufficiency of the property description in either the lease or the document filed by Norwest and concedes that the lease does not contain an option to purchase. In this case, application of a substantial compliance rule to the filing requirements of section 39–26–117(1)(b) does not prevent the Department *from collecting unpaid sales taxes but protects a lessor's statutorily recognized property interest.*

When Norwest filed the document in issue, it did not have the benefit of the majority's interpretation of the statute and attempted to comply with the statute. The trial court found, based on the evidence, that the document contained more information than the Department's standard memorandum form. The trial court also found that the Department did not examine the county records prior to the seizure of Norwest's property. Norwest's failure to file a copy of the lease with the county clerk and recorder and its failure to specifically state that the lease did not provide F.H. Markets with the right to purchase the equipment did not prejudice the Department. *See Zamel v. Port of New York Authority,* 56 N.J. 1, 5–7, 264 A.2d 201, 203–04 (1970) (Port Authority not prejudiced by failure of plaintiff to strictly comply with statutory notice requirements).

Under the circumstances, I would affirm the trial court and the court of appeals, and would hold that Norwest substantially complied with the requirements of section 39–26–117(1)(b) and was entitled to exemption of its property from the state's tax lien.

I am authorized to say that ROVIRA and LOHR, JJ., join in this dissent.