Issam A. AWAD, M.D., MSc, F.A.C.S., Plaintiff–Appellee,

v.

Robert BREEZE, M.D., Glenn Kindt, M.D., Kevin Lillehei, M.D., and Kenneth Winston, M.D., Defendants–Appellants.

No. 03CA2374.

Colorado Court of Appeals, Div. A.

April 21, 2005.

As Modified on Denial of Rehearing June 9 and June 30, 2005.

Certiorari Denied Feb. 27, 2006.*

---

* Chief Justice MULLARKEY would grant as to the following issue:

Whether under the sovereign immunity waiver for acts in the operation of University of Colorado Hospital, the state's primary teaching hospital, the concerted actions of the group of neurosurgeons/professors of neurosurgery, including conspiracies and false accusations and attacks on the clinical competence of the Chairman of Neurosurgery to faculty, referring physicians, medical students, residents and hospital staff, the bad faith investigation of multiple peer review complaints against the Chairman of Neurosurgery and efforts to undermine the hospital's neurosurgical accreditation, impact the care of sick or injured persons and the training of medical students and doctors and thus amount to actions taken in the operation of a public hospital.

Wheeler Trigg & Kennedy, P.C., Paul F. Hultin, Denver, Colorado; Purvis, Gray & Murphy, LLP, William R. Gray, Michael J. Thomson, Boulder, Colorado, for Plaintiff–Appellee.

Starrs Mihm & Caschette, LLP, Richard B. Caschette, Elizabeth A. Starrs, Denver, Colorado, for Defendants–Appellants.

DAVIDSON, Chief Judge.

In this interlocutory appeal filed pursuant to the Governmental Immunity Act (GIA), § 24–10–118(2.5), C.R.S.2004, defendants, Robert Breeze, Glenn Kindt, Kevin Lillehei, and Kenneth Winston, seek review of the trial court order denying their motion to dismiss the complaint filed by plaintiff, Issam A. Awad. We dismiss part of the appeal, reverse in part, vacate in part, and remand.

Plaintiff is the former chairman of the Department of Neurosurgery at the University of Colorado Health Sciences Center. Defendants are professors of neurosurgery employed by the University of Colorado (University) and practicing surgeons with the University of Colorado Hospital Authority (Hospital).

On January 22, 2003, plaintiff sent to the Colorado Attorney General two notices of claim against the University, the Hospital, and a number of public employees. He subsequently filed a complaint, naming defendants, among others, and seeking relief, as relevant here, for slander, intentional infliction of emotional distress and extreme and outrageous conduct, intentional interference with contractual relations, discrimination based on racial and national origin in violation of 42 U.S.C. § 1983, deprivation of professional reputation in violation of 42 U.S.C. § 1983, and conspiracy to deprive another of equal protection of the law in violation of 42 U.S.C. § 1985(3).

Defendants filed a motion to dismiss under C.R.C.P. 12(b)(5) alleging that: the notices of claim were insufficient; plaintiff's state tort claims did not arise from the "operation of a public hospital"; the complaint failed adequately to set forth the state tort claims for willful and wanton conduct; and plaintiff's federal claims were not actionable. The trial court denied the motion, and defendants filed this interlocutory appeal.

### I. Notices of Claim

■ Defendants first contend that the trial court erroneously denied their motion to dismiss plaintiff's state tort claims because the notices of claim did not identify defendants by name. We conclude that further proceedings are necessary.

Section 24–10–109(2)(c), C.R.S.2004, requires that a notice of claim contain "[t]he name and address of any public employee involved, if known." This condition, together with the other requirements set forth in the statute, is "designed to permit a public entity to conduct a prompt investigation of the claim and thereby remedy a dangerous condition, to make adequate fiscal arrangements to meet any potential liability, and to prepare a defense to the claim." *Woodsmall v. Reg'l Transp. Dist.,* 800 P.2d 63, 68 (Colo.1990).

■ A claimant must substantially comply with these requirements. Substantial compliance requires a good faith effort to include, as far as is reasonably possible, the listed information. *Woodsmall v. Reg'l Transp. Dist., supra,* 800 P.2d at 69; *see also Conde v. Colo. State Dep't of Pers.,* 872 P.2d

1381, 1386 (Colo.App.1994). In determining whether there has been substantial compliance, a court "may consider whether and to what extent the public entity has been adversely affected in its ability to defend against the claim by reason of any omission or error in the notice." *Woodsmall v. Reg'l Transp. Dist., supra,* 800 P.2d at 69.

Here, the notices did not specifically identify defendants. Instead, they described the participants in the alleged actions as a "group of professors in the Department of Neurosurgery"; a "group of doctors who work for the University Hospital"; and "employees and staff of the University." As noted, defendants are all professors in the Department of Neurosurgery, physicians at the Hospital, and employees of the University.

█ In determining the sufficiency of a notice, a trial court must employ the C.R.C.P. 12(b)(1) standard, under which the plaintiff bears the "relatively lenient" burden of demonstrating that notice was properly given. *See Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253, 1261 (Colo.2003) (trial court must apply C.R.C.P. 12(b)(1) analysis, regardless of whether the issue is jurisdictional); *see also Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). If there is no evidentiary dispute, a trial court may rule on the pleadings alone. *See Tidwell v. City & County of Denver,* 83 P.3d 75, 81 (Colo.2003); *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 924 (Colo.1993). However, a court must hold an evidentiary hearing when facts relating to immunity are in dispute. *See Tidwell v. City & County of Denver, supra,* 83 P.3d at 81; *Corsentino v. Cordova,* 4 P.3d 1082, 1087 (Colo.2000).

Here, the trial court evaluated defendants' motion under C.R.C.P. 12(b)(5) and determined that, under *Cassidy v. Reider,* 851 P.2d 286 (Colo.App.1993), plaintiff's notices were sufficient as a matter of law. We disagree, and conclude, for two reasons, that further proceedings are necessary.

First, the court's reliance on *Cassidy* was misplaced. There, a division of this court held that even though the claimant's notice did not correctly recite the public entity's official name, he had substantially complied with the notice provisions. In reaching this conclusion, the division stated that "an exact statement of the public entity's official name is not among the required contents of the notice." *Cassidy v. Reider, supra,* 851 P.2d at 288–89. Conversely, however, while the GIA does not expressly require a notice to list the public entity's correct name, it specifically requires "the name and address of any public employee involved, if known." Section 24–10–109(2)(c).

Second, the trial court did not evaluate defendants' motion under the *Trinity* standard. In addition, it is unclear, from the limited record before us, whether any evidence suggests that plaintiff omitted defendants' names from the notices in good faith. *See Woodsmall v. Reg'l Transp. Dist., supra,* 800 P.2d at 69. Nor is there evidence in the record as to prejudice, if any, resulting from these omissions. *See Finnie v. Jefferson County Sch. Dist. R–1, supra,* 79 P.3d at 1260 (*Trinity* hearings may be conducted to develop facts relating to immunity issues even when such facts are not directly disputed); *Woodsmall v. Reg'l Transp. Dist., supra,* 800 P.2d at 69.

Consequently, because we cannot ascertain on the record whether plaintiff substantially complied with the statutory notice provision, we must remand to the trial court to make this determination under the appropriate standard. The court must include a factual finding whether plaintiff made a good faith effort to satisfy the notice of claim requirements. *See Woodsmall v. Reg'l Transp. Dist., supra,* 800 P.2d at 69. Even if it finds that plaintiff omitted defendants' names from the notice in good faith, the court yet may find no substantial compliance if it also determines that the "public entity [was] adversely affected in its ability to defend against the claim by reason of [the] omission." *Woodsmall v. Reg'l Transp. Dist., supra,* 800 P.2d at 69; *see also Finnie v. Jefferson County Sch. Dist. R–1, supra,* 79 P.3d at 1258 ("the purposes behind the [GIA] are critical when determining" compliance).

If the trial court finds that plaintiff's notices of claim do not substantially comply

with the statutory notice provisions, it shall dismiss all of plaintiff's state tort claims.

## II. *Waiver of Sovereign Immunity for Operation of a Public Hospital*

In any event, even if plaintiff satisfied the GIA notice requirements, with one exception, we agree with defendants that the trial court erred in determining that sovereign immunity was waived pursuant to § 24–10–106(1)(b), C.R.S.2004, because plaintiff's state tort claims were based on "the operation of a public hospital." We conclude that all but one of plaintiff's state claims were not based on such an operation and that those claims, except for those based on willful and wanton conduct, therefore must be dismissed.

Although factual immunity determinations are evaluated under the clear error standard, here whether plaintiff's alleged injuries resulted from the operation of a public hospital requires no factual resolution. Therefore, the trial court's ruling presents a question of law that we review de novo. *See Tidwell v. City & County of Denver, supra,* 83 P.3d at 81; *Corsentino v. Cordova, supra,* 4 P.3d at 1087.

The burden to prove subject matter jurisdiction is on the plaintiff. *See Medina v. State,* 35 P.3d 443 (Colo.2001). However, the legislative grants of immunity are strictly construed and the provisions withholding immunity are interpreted broadly. *See Corsentino v. Cordova, supra,* 4 P.3d at 1086. When interpreting the GIA, we must also give effect to the legislature's intent and imbue the statutory words with their plain and ordinary meaning. *See Tidwell v. City & County of Denver, supra,* 83 P.3d at 81.

Under the GIA, a public employee is "immune from liability in any claim for injury ... which lies in tort or could lie in tort" except for specific types of actions where immunity is expressly waived. Section 24–10–118(2)(a), C.R.S.2004. As applicable here, § 24–10–106(1)(b) waives immunity in an action for injuries resulting from "[t]he operation of any public hospital." *See also* § 24–10–118(2)(a) (making this provision applicable to public employees).

The GIA defines the term "operation" as "the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law *with respect to the purposes of any public hospital.*" Section 24–10–103(3)(a), C.R.S.2004 (emphasis added).

For immunity to be waived under the GIA, the plaintiff's alleged injury must be "directly related to the purpose of [the public institution], as distinct from [its] operation." *Pack v. Ark. Valley Corr. Facility,* 894 P.2d 34, 37 (Colo.App.1995) ("the maintenance of visitor parking areas in order to facilitate prison visitation is not directly related to the purpose, as distinct from the operation, of a correctional facility"); *see Daley v. Univ. of Colo. Health Scis. Ctr.,* 111 P.3d 554, 2005 WL 170740 (Colo.App. No. 04CA0078, Jan. 27, 2005) (risk analysis, claim review, and litigation assistance services ancillary to the primary purpose of a hospital); *Richland Dev. Co. v. E. Cherry Creek Valley Water & Sanitation Dist.,* 934 P.2d 841 (Colo.App.1996) (no waiver of immunity under § 24–10–106(1)(f), C.R.S.2004, where record-keeping and responding to public inquiries were ancillary to purpose of water facility).

The term "public hospital" is not statutorily defined. However, we agree with the divisions of this court that have concluded that the primary purpose of such an institution is to provide medical or surgical care to sick or injured people. *See Daley v. Univ. of Colo. Health Scis. Ctr., supra,* 111 P.3d 554; *Sereff v. Waldman,* 30 P.3d 754, 756 (Colo.App.2000); *Plummer v. Little,* 987 P.2d 871, 874 (Colo.App.1999).

Here, plaintiff asserts claims of slander; intentional infliction of emotional distress; and intentional interference with contractual relations. In the complaint, plaintiff alleges these claims arose from (1) defendants' statements, made to the University's search committee, that plaintiff had mistreated residents, particularly female trainees, at the institution for which he previously worked; (2) defendants' accusations that plaintiff misled patients and families in clinical decisions; (3) defendants' attack on plaintiff's leadership

of the neurosurgery department, presented in a formal letter demanding his removal, repeated during a fact-finding investigation, and renewed after the fact-finding investigation concluded the charges were unsubstantiated; (4) defendants' repeated and intentional false statements indicating that plaintiff had caused harm to patients, made to residents, nurses, and other faculty; (5) defendants' intimidation and harassment of nurses and residents who did not agree with their repeated disparagement of plaintiff; (6) defendants' encouragement of other hospital staff to undermine accreditation reviews with the specific aim of discrediting plaintiff as program director and chairman; (7) defendants' incitement of residents to disobey plaintiff's directives on clinical documentation in the neurosurgical intensive care unit; (8) defendants' boycotting of professional events, concerning the development of the neurosurgery department, among other topics, where plaintiff was present; and (9) defendants' attempt to withdraw a contract offer accepting a Lebanese applicant in the residency program, whom they perceived as supportive of plaintiff.

First, concerning plaintiff's allegation in the complaint that defendant Lillehei incited residents to disobey plaintiff's directives on clinical documentation in the neurosurgical intensive care unit, we agree in part with defendants' contention that the trial court improperly determined that sovereign immunity had been waived. Clinical documentation is part of the practice of medicine and is an aspect of the provision of patient care. See Colo. State Bd. of Med. Exam'rs v. McCroskey, 940 P.2d 1044, 1047-49 (Colo. App. 1996) (practice of medicine includes record-keeping).

However, none of the remaining alleged activities directly relates to the primary purpose of a hospital—namely, to provide medical or surgical care to sick or injured persons. Instead, these claims concern conflicts arising among employees, who happen to be physicians, and only indirectly relate to providing care to patients. Thus, we conclude as a matter of law that such activities do not concern the operation of a public hospital, and, therefore, sovereign immunity was not waived under § 24–10–106(1)(b), as to these claims.

The Tenth Circuit Court of Appeals arrived at a similar conclusion in Craven v. Univ. of Colo. Hosp. Auth., 260 F.3d 1218, 1231 (10th Cir.2001). In that case, a plaintiff employed as a manager of safety and risk management at a public hospital filed a complaint alleging a wrongful discharge claim and a claim for breach of implied contract, among others, against the hospital. The court determined that the hospital was immune under § 24–10–106(1)(b) because "the personnel action at issue [was] only remotely related to [the hospital's] primary purpose." Craven v. Univ. of Colo. Hosp. Auth., supra, 260 F.3d at 1232 ("we do not believe the Colorado General Assembly intended § 106(b)(1) to be applied to claims like the one before us").

Contrary to plaintiff's contention, Sereff v. Waldman, supra, does not provide otherwise. There, a division of this court concluded that the actions of a physician enrolled in a residency program at a public hospital, who, as part of his residency, worked at a private hospital, constituted the operation of a public hospital under § 24–10–106(1)(b). In Sereff, unlike here, the plaintiff's injuries arose out of medical treatment given by the physician and were, therefore, directly related to the provision of medical or surgical care to a sick or injured person.

Therefore, except as to plaintiff's allegation concerning clinical documentation, we conclude that plaintiff's remaining state tort claims must be dismissed to the extent they depend upon a waiver of sovereign immunity based on the operation of any public hospital under § 24-10-106(1)(b). Such immunity, however, does not extend to claims against defendants based on willful and wanton conduct. See § 24-10-118(2)(a).

### III. State Tort Claims Alleging Willful and Wanton Conduct

■ Citing § 24–10–110(5)(a), C.R.S. 2004, defendants contend that plaintiff's state tort claims containing allegations of willful and wanton conduct were not adequately pled.

However, a trial court's determination that a complaint adequately sets forth a claim based on willful and wanton conduct is not reviewable in an interlocutory appeal. *See City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996) (a public employee's assertion of qualified immunity under the GIA does not present a jurisdictional issue; qualified immunity entitles an employee to immunity from liability, not from suit and, as a result, such claims are not the proper subject of an interlocutory appeal); *Richardson v. Starks,* 36 P.3d 168, 170–71 (Colo.App.2001); *see also Gallagher v. Bd. of Trs.,* 54 P.3d 386, 395 (Colo.2002) ("the legislature foreshadowed our holding in *Brace* that an allegation of willful and wanton conduct does not raise a jurisdictional matter under C.R.C.P. 12(b)(1)").

Thus, because we have no jurisdiction to consider it, we dismiss this portion of defendants' appeal.

## IV. *Federal Claims*

■ Similarly, we dismiss the portion of defendants' appeal that concerns their motion to dismiss plaintiff's §§ 1983 and 1985 claims; those matters are not subject to interlocutory appeal.

As relevant here, defendants' motion to dismiss plaintiff's § 1983 claims under C.R.C.P. 12(b)(5) asserted that defendants were not acting under color of state law. *See Hillside Cmty. Church v. Olson,* 58 P.3d 1021, 1025 (Colo.2002) (an actionable § 1983 claim requires a plaintiff to show that "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States"). Defendants contend that, because their motion to dismiss raised only a question of law, its denial was subject to immediate appeal. We disagree.

Generally, the denial of a motion to dismiss pursuant to C.R.C.P. 12(b) is not a final order and, therefore, is not subject to immediate appeal. *See* § 13–4–102, C.R.S.2004; *Feigin v. Digital Interactive Assocs., Inc.,* 987 P.2d 876, 880 (Colo.App.1999).

However, in the federal courts, a small class of cases may be appealed prior to a final order or judgment under the "collateral order" doctrine. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). A major characteristic of a claim subject to interlocutory appeal is that "unless it can be reviewed before [the proceedings terminate], it never can be reviewed at all." *Stack v. Boyle,* 342 U.S. 1, 12, 72 S.Ct. 1, 7, 96 L.Ed. 3 (1951).

One such claim is the federal qualified immunity privilege. This privilege shields government officials, acting within the scope of their discretionary authority, from civil liability under § 1983 as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see Maestas v. Lujan,* 351 F.3d 1001, 1007 (10th Cir. 2003); *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ Federal qualified immunity is an entitlement not to stand trial. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth, supra,* 472 U.S. at 526, 105 S.Ct. at 2815; *see also Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)("the importance of resolving immunity questions at the earliest possible stage in litigation" has been repeatedly stressed).

■ Thus, where there are no genuine triable issues of fact, an order denying summary judgment on qualified immunity grounds may be immediately appealed. *See Mitchell v. Forsyth, supra,* 472 U.S. at 528, 105 S.Ct. at 2816; *see also Saucier v. Katz, supra,* 533 U.S. at 200, 121 S.Ct. at 2155.

Based on this authority, in *Furlong v. Gardner,* 956 P.2d 545, 550 (Colo.1998), and *City of Lakewood v. Brace, supra,* 919 P.2d at 239, the Colorado Supreme Court determined that principles of neutrality and sound appellate practice required that, where there

are no genuine triable issues of fact, an order denying a motion for summary judgment on qualified immunity grounds in cases brought under § 1983 may be immediately appealed. It reasoned that Colorado courts should not deny interlocutory appeals when the federal privilege of qualified immunity is asserted in a § 1983 case, but allow interlocutory appeals of sovereign immunity questions under the GIA. *See also Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402 (Colo. App.2004); *Ewy v. Sturtevant,* 962 P.2d 991, 993 (Colo.App.1998).

However, contrary to defendants' contention, the exception to the requirement of finality created in *Furlong, Brace,* and the federal cases upon which they relied, only applies to the denial of a motion to dismiss a § 1983 claim where a qualified immunity defense is raised. Accordingly, because defendants' motion to dismiss for failure to state a claim does not implicate any questions of immunity, the trial court's ruling denying defendants' motion is not subject to interlocutory appeal.

 Nor is defendants' challenge to plaintiff's § 1985(3) claim reviewable here. Unlike a qualified immunity defense under § 1983, in the federal courts the denial of a motion to dismiss a § 1985 claim is not subject to interlocutory appeal. *See, e.g., Malik v. Arapahoe County Dep't of Soc. Servs.,* 191 F.3d 1306, 1316–17 (10th Cir.1999).

However, federal circuit courts have discretion to exercise pendent appellate jurisdiction over claims, including those brought under § 1985, that accompany an interlocutory appeal of a denial of qualified immunity when the otherwise unappealable issue is "inextricably intertwined" with the appealable issue or "review of the [nonappealable issue is] necessary to ensure meaningful review of the [appealable issue]." *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 1212, 131 L.Ed.2d 60 (1995); *see also Poulos v. Caesars World, Inc.,* 379 F.3d 654, 668 (9th Cir.2004); *United States v. Bundy,* 392 F.3d 641, 649 (4th Cir.2004); *Malik v. Arapahoe County Dep't of Soc. Servs., supra,* 191 F.3d at 1316–17; *Merritt v. Shuttle, Inc.,* 187 F.3d 263, 268–69 (2d Cir.1999); 16 Charles A. Wright, Arthur R. Miller, Edward

H. Cooper & Eugene Gressman, *Federal Practice & Procedure: Jurisdiction 2d* § 3937, at 696 (1996).

Colorado appellate courts have not addressed the issue of federal pendent appellate jurisdiction. However, we have concluded above that the denial of defendants' motion to dismiss plaintiff's § 1983 claims was not subject to interlocutory appeal. Thus, even assuming the doctrine of pendent appellate jurisdiction would be applied in Colorado state courts, the denial of defendants' motion to dismiss plaintiff's § 1985(3) claim still would not be subject to review. *See Malik v. Arapahoe County Dep't of Soc. Servs., supra,* 191 F.3d at 1316–17 (exercising pendent appellate jurisdiction over conspiracy claim under § 1985).

The appeal is dismissed without prejudice as to plaintiff's federal claims and as to the determination whether plaintiff's state tort claims based on willful and wanton conduct were adequately pled. Except for the determination that defendants were not immune from liability for state tort claims based on plaintiff's directives on clinical documentation, the order is reversed to the extent it determined that defendants' immunity was waived under the exception for operation of a public hospital; the order is vacated to the extent it determined that plaintiff substantially complied with the notice provisions of the GIA; and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge WEBB and Judge STERNBERG concur.