Theodora SADDORIS, M.D., and John
L. Nieters, M.D.,
Petitioners–Appellants,

v.

COLORADO STATE BOARD OF
MEDICAL EXAMINERS,
Respondent–Appellee.

No. 89CA0486.

Colorado Court of Appeals,
Div. IV.

July 5, 1990.

Rehearing Denied Aug. 9, 1990.

Certiorari Granted Jan. 14, 1991.

Yu, Stromberg & Huotari, P.C., Frederick Y. Yu, Denver, for petitioners-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., James F. Carr, Kathie A. Clinton, Asst. Attys. Gen., Denver, for respondent-appellee.

Opinion by Judge TURSI.

Petitioners, Theodora Saddoris, M.D. and John L. Nieters, M.D., appeal the decision of the respondent, Colorado State Board of Medical Examiners (Board), denying their applications for licenses to practice medicine in Colorado solely on the basis that they were foreign medical school graduates whose medical school had not been approved to the satisfaction of the Board. We reverse and remand.

Plaintiffs are both licensed practicing physicians who graduated from the American University of the Caribbean (AUC) Medical School in Montserrat, British West Indies. In January 1987, they both submitted applications to be licensed to practice medicine in Colorado.

In April 1987, the Board initially denied their applications for medical licensure upon the ground that:

"[T]he Board possessed insufficient information to conclude that AUC Medical School conforms to the minimum education requirements established by the [Liaison Committee on Medical Education] or otherwise qualifies as an approved medical school, as required by Colorado statute and rules."

After reconsideration, this decision was confirmed on October 8, 1987.

Plaintiffs then timely requested and received a hearing before an administrative law judge (ALJ). The ALJ received evidence, heard testimony, and determined that, except for the lack of proof concerning the qualifications of AUC medical school, both plaintiffs had satisfied all the licensure requirements imposed on foreign medical school graduates and were otherwise qualified to receive a license to practice medicine in the state of Colorado.

It noted that, as stipulated by the parties, Saddoris had received her M.D. degree from AUC in January 1982. She had taken and passed all necessary examinations, including the Educational Commission for Foreign Medical Graduates (ECFMG) examination and the Federal Licensing Examination (FLEX). She had also served three years in an accredited residency program in internal medical at Deaconess Hospital in St. Louis, Missouri, and had become a certified diplomate of the American Board of Internal Medicine. Further, at the time of her application, she was licensed as a physician in the states of New Jersey, Missouri, and Indiana, where she was actively engaged in the practice of internal medicine.

Nieters was similarly qualified. He had received his M.D. degree from AUC in January 1983. He, too, had taken and passed all necessary examinations including the ECFMG and FLEX examinations. He also had completed over two years of an accredited post-graduate residency at Rutgers Medical School in New Jersey in the field of psychiatry. And, at the time of his application, was in the process of completing a second post-graduate residency in family practice at the Indiana University School of Medicine. He is licensed as a physician in the states of Missouri and Indiana.

Notwithstanding that the plaintiffs had "impressive credentials"; that they had satisfied the other requirements for licensure; that the Board had consistently licensed applicants from other foreign medical schools which do not meet LCME standards; and that "no student could possibly provide sufficient information to establish LCME accreditation," the ALJ concluded that she could not overlook or ignore the requirement in § 12–36–107(2), C.R.S. (1985 Repl.Vol. 5) that:

"No person shall be granted a license to practice medicine ... unless he is ... a graduate of an approved medical college, as defined in § 12–36–108...."

Since the plaintiffs had not met their "enormous burden" of proving that they graduated from an "approved medical college," the ALJ decided that their applications for licenses for practice medicine in Colorado had to be denied.

On January 19, 1989, the Board reviewed the ALJ's decision and considered the exceptions filed thereto. On February 10, 1989, it unanimously entered its final order which accepted the ALJ's decision and denied the plaintiffs' licenses to practice medicine in Colorado.

## I.

Plaintiffs argue that the Board and the ALJ erred in denying them licensure solely on the basis that AUC medical school did not meet the definition of an "approved medical college" pursuant to § 12–36–107(2) and § 12–36–108, C.R.S. (1985 Repl.Vol. 5). They maintain that the academic requirement of these sections does not apply to them since they were foreign medical school graduates and were only required to meet the standards set forth in 3 Code Colo.Reg. 713–3 pursuant to § 12–36–107.6, C.R.S. (1985 Repl.Vol. 5). Consequently, they assert that the Board erred in denying their applications for licensure upon this basis. We agree.

As noted by the ALJ, the crux of this dispute is determining which licensure requirements apply to plaintiffs' applications. Initially, both the plaintiffs and the Board agree that the plaintiffs' eligibility for licensure is governed by the "standards and procedures for the licensing of graduates from medical colleges ... outside the United States" as set forth in 3 Code Colo.Reg. 713–3 (effective November 30, 1983) and authorized by § 12–36–107.6.

These rules and regulations, as applicable to plaintiffs when they applied, provide:

"An applicant who has studied medicine at a medical college or school located outside the United States or Canada *and who is not eligible for licensure pursuant to the Fifth Pathway Program as set forth in C.R.S.1973, 12–36–107.5, or pursuant to C.R.S. 12–36–107(1)(d),* may be eligible for licensure for the practice of medicine if he:

1. Satisfactorily completes the examination of the Educational Commission for Foreign Medical Graduates; and

2. Submits evidence satisfactory to the Board that the Medical School from which the applicant graduated:

a. *is approved by the Liaison Committee on Medical Education* (LCME, a joint committee of the Association of American Medical Colleges, and the Council on Medical Education of the American Medical Association) or the American Osteopathic Association (AOA), or

b. *conforms to the minimum educational standards established by the LCME or AOA,* as determined by the Board.

. . . .

c. The Board may *approve a school based on its own investigation* of the educational standards and facilities.

. . . .

3. Satisfactorily completes two years of approved post-graduate training as defined in C.R.S.1973, 12–36–109 or 110; and

4. Satisfactorily completes the examinations required in C.R.S.1973, 12–36–107 of all applicants for licensure; and

5. Otherwise meets qualifications for licensure statutorily required for all applicants." (emphasis supplied)

Requirement "2" of this rule, which was added as an amendment in 1983, refers to the LCME and purportedly incorporates the minimum educational standards established by the LCME. The Board's reliance upon the LCME and its standards, however, is plainly deficient in this case.

## A.

The LCME approval requirement referred to in "2.a" cannot be used to deny licensure to plaintiffs. LCME does not accredit medical schools outside the United States and Canada. Moreover, according to the Board's own expert, the LCME accreditation standards were not adopted with the intent that they would apply to schools outside the United States and Canada.

Since AUC is a medical school located outside the United States and Canada, the LCME does not evaluate it. Accordingly, approval by the LCME is an impossibility and a fiction which could not have been intended to apply to foreign medical schools such as AUC. Hence, we conclude that requirement "2.a" cannot reasonably be applied against plaintiffs. *Cf.*

§ 24–4–104(2), C.R.S. (1988 Repl.Vol. 10A) ("Terms, conditions, or requirements limiting any license shall be valid only if reasonably necessary to effectuate the purposes, scope, or stated terms of the statute...."); *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 P. 132 (1913) (regulations prescribing conditions as to the right to practice must be reasonable).

### B.

■ The Board has also inadequately incorporated the LCME standards and may not rely upon requirement "2.b" since it has failed, as required by § 24–4–103(12.5), C.R.S. (1988 Repl.Vol. 10A), to identify the LCME's standards by their correct title or by any date; to state that the rule does not include later amendments to the LCME; to maintain certified copies of any LCME standards; to make available to the public the applicable version of the LCME standards; or to specify the title and address of a Board employee responsible for providing information about obtaining or examining the LCME's standards. Hence, the sanction set forth in § 24–4–103(10), C.R.S. (1988 Repl.Vol. 10A) must be applied.

Under this statute, "[n]o rule shall be relied upon or cited against a person unless ... it has been made available to the public in accordance with this section." The purpose of this "statutorily imposed rule of evidence" is one of due process, to ensure that a correct current copy of regulations promulgated by administrative agencies will be available to members of the public. *See People v. Bobian,* 626 P.2d 1132 (Colo. 1981).

In this case, therefore, the LCME's standards cannot be cited against plaintiffs, and we must read the regulations, 3 Code Colo.Reg. 713–3, exclusive of the LCME requirements.

### C.

■ The only remaining "approved school" requirement which the Board may rely upon to deny plaintiffs' applications is "2.c." Since, the Board maintains that, in practice, it uses and relied upon the LCME standards in investigating a school, we con-

clude that this requirement, too, cannot be relied upon or cited against plaintiffs.

Because the remaining licensure requirements imposed on foreign medical school graduates by 3 Code Colo.Reg. 713–3 have all been satisfied by plaintiffs, *prima facie* they are entitled to licensure under the rule.

### II.

The Board, however, contends that the licensing requirements in § 12–36–107, C.R.S. (1985 Repl.Vol. 5) also apply to plaintiffs and, thus, the requirement of § 12–36–107(2) of graduating from an "approved medical college" must, in addition, be satisfied by plaintiffs. With this, we disagree.

The licensure requirements throughout the Colorado Medical Practice Act, § 12–36–101, et seq., C.R.S. (1985 Repl.Vol. 5), construed as a whole to give a consistent, harmonious, and sensible effect to all its parts and to further legislative intent, *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986), reflect a legislative intent to distinguish between three kinds of applicants in applying licensure requirements. Section 12–36–107.5, C.R.S. (1985 Repl.Vol. 5) sets forth the qualifications for licensure of "Colorado resident physicians trained at foreign medical schools"; § 12–36–107.6 governs the licensure of "Other foreign medical school graduates"; and § 12–36–107 sets forth the "Qualifications for licensure" of all other medical school graduates.

So construed, these provisions do not reflect an intent to require applicants, such as plaintiffs, to satisfy the standards and procedures for licensure set forth in § 12–36–107 *in addition to* the substantially similar requirements authorized by § 12–36–107.6 and specifically set forth in 3 Code Colo.Reg. 713–3. On the contrary, the legislative language, history, and scheme evince an intention by the General Assembly to establish parallel, yet separate and exclusive, standards and procedures for licensing Colorado and foreign medical school graduates.

The first indications of this intention are manifested in the placement and numbering scheme of the two provisions concerning foreign medical schools, §§ 12–36–107.5 and 12–36–107.6. These two provisions, added in 1977 and 1979 respectively, are more specific and sequentially follow the general requirements for licensure in § 12–36–107. *Cf.* § 2–4–205, C.R.S. (1980 Repl.Vol. 1B) (if there is an irreconcilable conflict between a general and a later, more specific provision, that latter prevails).

In addition, § 12–36–107.5 and 12–36–107.6 describe comprehensive sets of *alternative* eligibility requirements for licensure in the state of Colorado. Section 12–36–107.5, known as the "Fifth Pathway Program," provides for the licensure of certain Colorado resident physicians who· studied medicine at a medical college located outside of the United States or Canada. Nothing in this provision indicates that the requirements set forth in § 12–36–107 must, in addition, be complied with in order to obtain licensure. Rather, § 12–36–107.5 begins with the language "[a]nything in this article to the contrary notwithstanding."

This construction of the statute as not imposing cumulative requirements is particularly true with regard to the requirement of an "approved medical college" as provided in § 12–36–107(2). Section 12–36–107.5 expressly addresses this topic in subsection (1)(c) wherein it is stated that an applicant may be eligible for licensure if he "[h]as studied at a medical school which is recognized by the world health organization." Clearly, this is a separate and distinct means of accepting an applicant's medical school and, being at odds with § 12–36–107(2), it governs.

Section 12–36–107.5(2) also expressly exempts applicants under this section from obtaining certification by the Educational Commission of Foreign Medical Graduates (ECFMG). Since the ECFMG certification is required of only foreign medical school graduates and serves a similar purpose to the "national boards" taken by United States medical school graduates (which is to test knowledge gained in medical school and ability to succeed in residency), § 12–36–107.5(2) presumedly is exempting Colorado resident applicants from the requirements otherwise imposed on foreign medical school graduates, as found in the rules at 3 Code Colo.Reg. 713–3 and authorized by § 12–36–107.5's sister provision, § 12–36–107.6. Again, this carefully drawn distinction highlights the parallel, yet independent, nature of the different eligibility requirements imposed by each of the three provisions, §§ 12–36–107, 12–36–107.5, and 12–36–107.6.

The express language of § 12–36–107 is also supportive. It provides that the eligibility requirements for licensure in subsection (1) are *not exclusive*, but are "[s]ubject to the other conditions and provisions of [the Colorado Medical Practice Act]...."

The express language of subsection (2) also undermines the Board's contention that it must be applied to plaintiffs. This subsection is, by its plain language, limited to applicants applying for licensure *pursuant to subsection (1)* of § 12–36–107. It provides: "No person shall be granted a license to practice medicine *as provided by subsection (1) of this section* unless he ... is a graduate of an approved medical college, as defined in § 12–36–108...." (emphasis supplied)

Finally, we note that § 12–36–107.6 was recently amended, effective March 27, 1990, to delete the first two sentences of the section and to add:

"An applicant whose foreign medical school does not meet the definition of an approved medical college as set forth in section 12–36–108 may be eligible for licensure at the discretion of the board if the applicant meets all other requirements for licensure and holds specialty board certification, current at the time of application for licensure, conferred by a regular member board of the American Board of Medical Specialties or the American Osteopathic Association." *See* Colo.Sess.Laws 1990, ch. 92 at 818. (House Bill 90–1203)

By virtue of this amendment, the General Assembly has clarified the procedures

for licensure in 3 Code Colo.Reg. 713–3 and adopted the general standards in § 12–36–107 subject to certain additional requirements. This amendment is consistent with our interpretation above and indicates that the General Assembly did not previously intend the requirement of an "approved medical college," as set forth in § 12–36–108, to apply to foreign medical school graduates.

■ Based upon our reading of the Colorado Medical Practice Act as a whole, we conclude that the requirements for licensure in § 12–36–107 did not, at the time plaintiffs applied, apply to applicants governed by § 12–36–107.6. Hence, the requirement in § 12–36–107(2) that an applicant be a "graduate of an approved medical college" does not apply to plaintiffs and the Board's conclusion to the contrary was error.

■ The plaintiffs' eligibility is governed by the rules and regulations concerning the licensing of foreign medical school graduates set forth in 3 Code Colo.Reg. 713–3, and these are the sole criteria to be considered. Here, both plaintiffs satisfied all the eligibility criteria of 3 Code Colo.Reg. 713–3 except requirement "2." Under the circumstances, however, the failure to satisfy requirement "2" does not preclude plaintiffs' licensure since, as we determined above, the LCME standards cannot be relied upon or cited against the plaintiffs.

We, therefore, hold that the plaintiffs are entitled to licensure and that the Board erred in denying their applications on the basis that they had not proven they graduated from an "approved medical college."

### III.

In light of this determination, we do not need to address plaintiffs' other three contentions.

The order of the Colorado State Board Medical Examiners which denied licensure to plaintiffs is reversed, and the cause is remanded with directions to award plain-

tiffs licenses to practice medicine in Colorado.

METZGER and REED, JJ., concur.