## COLORADO STATE BOARD OF MEDICAL EXAMINERS, Petitioner,

v.

## Theodora SADDORIS, M.D., and John L. Nieters, M.D., Respondents.

### No. 90SC567.

Supreme Court of Colorado, En Banc.

Feb. 3, 1992.

Modified on Denial of Rehearing March 10, 1992.

---

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to consider whether the court of appeals, in *Saddoris v. Colorado State Board of Medical Examiners*, 802 P.2d 1136 (Colo.App.1990), erred when it held that section 12–36–107 of the Colorado Medical Practice Act, §§ 12–36–101 to –136, 5 C.R.S. (1985) (the Act), which provides the general requirements for medical licensure in Colorado, does not apply to foreign medical school graduates. We reverse.[1]

I.

In January 1987, respondents Theodora Saddoris (Saddoris) and John Nieters (Nieters) applied for a license to practice medicine in Colorado. Saddoris and Nieters are graduates of the American University of the Caribbean (AUC). AUC is a foreign medical school located on the island of Montserrat in the British West Indies.

On April 9, 1987, petitioner, the Colorado State Board of Medical Examiners (the Board), denied their applications because Saddoris and Nieters failed to provide sufficient information to establish that AUC was an approved medical college as required by section 12–36–107(2), 5 C.R.S. (1985). Section 12–36–107(2) provides:

No person shall be granted a license to practice medicine as provided by subsection (1) of this section unless he is at least twenty-one years of age, *is a graduate of an approved medical college, as defined in section 12–36–108*,[2] and has completed an approved internship of at least one year, as defined in section 12–36–109, or has completed at least one year of post-graduate training approved by the board. The board may grant a

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Eugene C. Cavaliere, Deputy Atty. Gen., Suzanne A. Fasing, First Asst. Atty. Gen., James F. Carr, Kathie A. Clinton, Asst. Attys. Gen., Denver, for petitioner.

Yu, Stromberg, Huotari & Cleveland, P.C., Frederick Y. Yu, Denver, for respondents.

1. This case is being reviewed under the Act as it existed at the time respondents submitted their applications. At that time, there were two sections that applied to graduates of foreign medical schools: sections 12–36–107.5, 5 C.R.S. (1985), and 12–36–107.6, 5 C.R.S. (1985). The provisions in the Act dealing with foreign medical school graduates were revised in 1988. Section 12–36–107.5 was repealed and § 12–36–107.6 was rewritten to apply to all applicants who graduated from foreign medical schools. Respondents have not applied under this new provision.

2. Section 12–36–108, 5 C.R.S. (1985), provides:

An approved medical college is a college which conforms to the minimum educational standards for medical colleges or for osteopathic colleges as established respectively by the American medical association or by the American osteopathic association, or a college which is approved by either of said associations. The board shall have the authority, upon its own investigation of the educational standards and facilities thereof, to approve any other medical college.

license subject to terms of probation or may refuse to grant a license to any such person if it has reasonable grounds to believe he has committed any of the acts or offenses defined in this article as unprofessional conduct.

Saddoris and Nieters filed a request for reconsideration with the Board, pursuant to section 12–36–119(1), 5 C.R.S. (1985). On October 8, 1987, the Board, after considering the request, affirmed the prior decision.

Saddoris and Nieters requested and received a hearing before an administrative law judge (ALJ), pursuant to section 24–4–104(9), 10A C.R.S. (1988). They contended that the general statutory provisions concerning licensure in section 12–36–107—specifically, the requirement in subsection (2) that applicants must graduate from an approved medical college—did not apply to foreign medical school graduates. The ALJ concluded that Saddoris and Nieters "must satisfy Section 12–36–107(2)'s requirement of graduation from an approved medical college" and that they had not satisfied this requirement. Accordingly, the ALJ decided that Saddoris' and Nieters' applications should be denied.[3]

Saddoris and Nieters filed exceptions to the ALJ's decision with the Board. On February 10, 1989, the Board issued the Final Board Order. In its order, the Board adopted the ALJ's finding that AUC was not an approved medical college and denied the applications. Saddoris and Nieters appealed the Board's final order to the court of appeals, pursuant to section 12–36–119(2), 5 C.R.S. (1985).

The court of appeals reversed the Board's decision. The court determined that "the requirements for licensure in section 12–36–107 did not ... apply to applicants governed by section 12–36–107.6," 5 C.R.S. (1985). Section 12–36–107.6 provides:

**Other foreign medical school graduates.** The board shall, by regulation, prescribe standards and procedures for the licensing of graduates from medical colleges in other states and territories of the United States and outside of the United States. Such standards and procedures shall be substantially the same as those for graduates from medical colleges in this state. For graduates of schools not approved by the liaison committee for medical education or the American osteopathic association, the board may require two years of postgraduate clinical training approved by the board.

The court reasoned that the General Assembly intended to "establish parallel, yet separate and exclusive, standards and procedures for licensing Colorado and foreign medical school graduates." The court concluded that Saddoris' and Nieters' applications were governed by section 12–36–107.6, and thus section 12–36–107(2)'s requirement that an applicant be a graduate of an approved medical college did not apply to Saddoris and Nieters. The court ordered that Saddoris and Nieters be granted a license to practice medicine in Colorado.

The Board petitioned this court for a writ of certiorari. We granted certiorari to determine whether

the court of appeals err[ed] when it held that section 12–36–107, 5 C.R.S. (1985), does not apply to foreign medical [school] graduates (FMGs) and that FMGs do not need to graduate from an approved medical school, which is a requirement for other applicants for medical licensure in the state of Colorado.

The Board contends that the Act expresses the General Assembly's intent that foreign medical school graduates, such as Sad-

---

**3.** The ALJ addressed two other issues: first, whether § 2.b. of the Rules and Regulations Concerning Licensing of Foreign Medical School Graduates, 3 Colo.Code Regs. 713–3 (1985), applied to Saddoris and Nieters. Section 2.b. allowed an applicant to submit evidence that the medical school from which he or she graduated conformed "to the minimum educational standards established by the LCME or

AOA." This court denied certiorari on this issue.

The second issue addressed was whether applicants who seek licensure by reciprocity under section 12–36–107(1)(d), 5 C.R.S. (1985), need to establish that they graduated from an approved medical college pursuant to section 12–36–107(2). Because of its disposition of the case, the court of appeals did not consider this issue.

doris and Nieters, must satisfy the general requirements for medical licensure in section 12–36–107. Saddoris and Nieters contend that the court of appeals was correct in concluding that the Act reflects the General Assembly's intent that section 12–36–107.6 establishes separate and exclusive standards for licensing foreign medical school graduates and, thus, they did not have to satisfy section 12–36–107(2)'s requirement of graduation from an "approved medical college." We agree with the Board.

## II.

In resolving the issue raised by the parties, we are called upon to interpret the licensing provisions of the Act: specifically, whether foreign medical school graduates, such as Saddoris and Nieters, must satisfy section 12–36–107's requirement of graduation from an approved medical college.

■■■ The principles guiding judicial interpretation of statutes are well settled. "Statutes must be construed as a whole to give consistent, harmonious and sensible effect to all their parts." *Adams County Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688, 691 (Colo.1990). The "first goal of a court in construing a statute is to ascertain and give effect to the intent of the General Assembly." *People v. Terry*, 791 P.2d 374, 376 (Colo.1990). To ascertain legislative intent, courts look first to the statutory language. *People v. District Court, Second Judicial Dist.*, 713 P.2d 918, 921 (Colo. 1986). With these principles in mind, a review of the Act and its purposes supports our conclusion that foreign medical school graduates, such as Saddoris and Nieters, must satisfy the requirements in section 12–36–107.

## A.

The Act regulates and controls the practice of medicine in Colorado. Section 12–36–107 provides the "[q]ualifications for li-

censure" that must be satisfied by all applicants. Section 12–36–107 provides that, "[s]ubject to the other conditions and provisions of this article, a license to practice medicine shall be granted by the board to an applicant therefor only upon the basis of" satisfying certain qualifications. Basically, this section requires an applicant: (1) to pass a board-approved examination, § 12–36–107(1); (2) to be at least twenty-one years old, § 12–36–107(2); (3) to graduate from an approved medical college,[4] § 12–36–107(2); and (4) to complete at least one year of post-graduate training or an internship, § 12–36–107(2).

The General Assembly created an express exception to these general requirements in section 12–36–107.5, 5 C.R.S. (1985).[5] Section 12–36–107.5 establishes an alternative licensing procedure, known as the "fifth pathway program," for Colorado residents who attend a foreign medical school. This section is a detailed and comprehensive program intended to provide alternative standards and procedures for "fifth pathway" applicants and, most importantly, specifically excludes an applicant applying under 12–36–107.5 from the requirements found in section 12–36–107 and the remainder of the Act by prefacing its provisions with the statement, *"[a]nything in this article to the contrary notwithstanding."* Generally, the requirements are that the applicant (1) was a resident of Colorado prior to medical school; (2) graduated from a college or university in the United States; (3) graduated from a medical school recognized by the world health organization; (4) completed one year of post-graduate training at a hospital affiliated with an approved medical school; and (5) completed the post-graduate hospital training required by the Board for all applicants.

While the General Assembly intended section 12–36–107.5 to operate as an exception to the general requirements in section

**4.** The Act provides three methods by which an applicant can have their medical college approved: first, it can be approved by accreditation from either the Liaison Committee on Medical Education (LCME) or by the American Osteopathic Association (AOA); second, the applicants can submit evidence that their school

meets the minimum educational standards established by the LCME or AOA; third, a school can be approved by the Board based on its own investigation. § 12–36–108.

**5.** Saddoris and Nieters do not qualify for this exception.

12–36–107, the language of the Act does not create such an exception regarding section 12–36–107.6. Section 12–36–107.6 applies to "[o]ther foreign medical school graduates," such as Saddoris and Nieters. The language in this section does not specifically exclude an applicant from the requirements found in section 12–36–107 and elsewhere in the Act. This distinction is even more significant in light of the fact that the General Assembly enacted section 12–36–107.6 after section 12–36–107.5. *See* Ch. 108, sec. 7, § 12–36–107.6, 1979 Colo. Sess.Laws 507, 510; Ch. 155, sec. 1, § 12–36–107.5, 1977 Colo.Sess.Laws 686. Thus, the General Assembly was aware of the exclusionary language in section 12–36–107.5 when it enacted section 12–36–107.6, yet did not include similar language in that section. *See Smith v. Miller*, 153 Colo. 35, 39, 384 P.2d 738, 740 (1963) (General Assembly is presumed to have acted with full knowledge of previous legislation); *Meyer v. Charnes*, 705 P.2d 979, 982 (Colo.App. 1985) ("The General Assembly is presumed to have knowledge of existing laws at the time it enacts a statute.").

Moreover, section 12–36–107.6 does not provide a detailed and comprehensive program such as that provided for "fifth pathway" applicants in section 12–36–107.5. This section simply requires the Board to adopt regulations for licensing foreign medical school graduates and provides two general guidelines for promulgating those regulations. First, the standards for licensing foreign medical school graduates must be *"substantially the same* as those for graduates from medical colleges in this state." Second, the Board may require two years of post-graduate clinical training for foreign medical school graduates.

Section 12–36–107 mandates the qualifications for medical licensure in Colorado. The clear language of section 12–36–107.6 indicates that the General Assembly intended this provision to work in conjunction with and complement, rather than supplant, the mandated requirements in section 12–36–107.

### B.

Our conclusion that the General Assembly intended section 12–36–107.6 to comple-ment the requirements in section 12–36–107 is supported by other provisions in the Act. First, the express language of section 12–36–107 does not exclude foreign medical school graduates from its requirements. Unlike the exclusionary language in section 12–36–107.5, the phrase, "subject to the other conditions and provisions of this article" in section 12–36–107, allows for the imposition of additional requirements found elsewhere in the Act and does not preclude the application of section 12–36–107 to other provisions in the Act. This statutory scheme in section 12–36–107 is reflected in the Board's regulations, promulgated pursuant to section 12–36–107.6, which specifically impose on foreign medical school graduates the requirement that they "otherwise meet[ ] the qualifications for licensure statutorily required for all applicants." 3 Colo.Code Regs. 713–3(5) (1983).

Furthermore, section 12–36–107(1) states that "a license to practice medicine *shall* be granted by the board to an applicant therefor *only* upon the basis of" satisfying the qualifications for licensure. Additionally, section 12–36–107(2) states that "[n]o person *shall* be granted a license to practice medicine as provided by subsection (1) of this section unless" he or she is at least twenty-one years old and graduates from an approved medical college. § 12–36–107(1), (2). The word "shall" is presumed to indicate a mandatory requirement. *Williams Natural Gas Co. v. Mesa Operating Ltd. Partnership*, 778 P.2d 309, 311 (Colo.App.1989). Thus, unless an applicant is specifically excluded from these requirements, the clear intent evinced from this language is that all applicants must satisfy the general "qualifications for licensure" in section 12–36–107.

In determining the intent of the General Assembly, we must also consider the "consequences of a particular construction." § 2–4–203, 1B C.R.S. (1980). Saddoris and Nieters contend that foreign medical school graduates do not need to satisfy the requirements in section 12–36–107(2). Such an interpretation, however, would not give a consistent, harmonious, and sensible effect to all parts of the Act.

Section 12–36–107(2) provides that applicants must be at least twenty-one years old and graduate from an approved medical college, and also permits the Board to issue a license subject to probation. A conclusion that section 12–36–107(2) does not apply to foreign medical school graduates leads to the absurd result that the requirements for graduates of medical schools in Colorado would be more stringent than the requirements for foreign medical school graduates. The General Assembly did not intend such a "consequence" when they enacted the Act. *See City of Ouray v. Olin,* 761 P.2d 784, 788 (Colo.1988) (when construing a statute, the court should not follow statutory construction that leads to an absurd result). Therefore, we can reasonably conclude that the General Assembly intended the approved medical college requirement, age requirement, and probation option in section 12–36–107(2) to apply not only to graduates of medical schools in Colorado, but also intended these provisions to apply to foreign medical school graduates. *See People v. Terry,* 791 P.2d 374, 376 (stating that a court should give effect to the whole statute and avoid constructions that would render meaningless a part of the statute).

Finally, "statutes must be construed so as to effectuate their intent *and beneficial purposes,* not to defeat them." *Colorado Health Care Ass'n v. Colorado Dept. of Social Servs.,* 842 F.2d 1158, 1171 (10th Cir.1988) (emphasis added). The General Assembly stated the Act's purpose in section 12–36–102, 5 C.R.S. (1985). This section provides:

> **Legislative declaration.** The general assembly declares it to be in the interests of public health, safety, and welfare to enact laws regulating and controlling the practice of the healing arts to the end that the people shall be properly protected against unauthorized, unqualified, and improper practice of the healing arts in this state, *and this article shall be construed in conformity with this declaration of purpose.*

(Emphasis added.) In construing the Act with this purpose in mind, we conclude that it would not be in the "interests of public health, safety and welfare" to allow foreign medical school graduates to obtain a medical license based on lesser standards than we require for someone who graduates from a medical college in Colorado or elsewhere in the United States. The General Assembly intended foreign medical school graduates to satisfy the same general requirements for medical licensure, such as graduating from an approved medical college, as those applicants who graduate from medical schools in Colorado and the United States. Such intent can be ascertained from the express language of section 12–36–107.6 which requires the licensing standards and procedures for foreign medical school graduates to be *"substantially the same* as those for graduates from medical colleges in this state." Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.