**COLORADO STATE BOARD OF MEDICAL EXAMINERS,**
Complainant–Appellee,

v.

**Brian L. McCROSKEY, M.D.,**
Respondent–Appellant.

**No. 95CA1817.**

Colorado Court of Appeals,
Div. IV.

Nov. 7, 1996.

Rehearing Denied Dec. 5, 1996.

Certiorari Denied July 28, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney Gen-eral, Timothy M. Tymkovich, Solicitor General, Robert N. Spencer, Assistant Attorney General, Denver, for Complainant–Appellee.

Tondre and Lapuyade, Brice A. Tondre, Denver, for Respondent–Appellant.

Opinion by Judge DAVIDSON.

Respondent, Brian L. McCroskey, M.D., appeals from an order of the Colorado State Board of Medical Examiners (Board) issuing him a letter of admonition for acts of medical recordkeeping falling below generally accepted standards of medical practice. The primary issue is whether recordkeeping is included in the practice of medicine. We hold that it is, and affirm.

The facts of this case, and much of the procedural history, are set forth in *State Board of Medical Examiners v. McCroskey*, 880 P.2d 1188 (Colo.1994) (*McCroskey II* ). As pertinent here, an inquiry panel of the Board issued a letter of admonition to respondent based on incidents arising from the care of an emergency room patient at a Denver hospital. Respondent declined to accept the letter and, pursuant to § 12–36–118(4)(c)(III), C.R.S. (1991 Repl.Vol. 5B), of the Medical Practice Act (MPA), the inquiry panel formally charged respondent with violating § 12–36–117(1)(p), C.R.S. (1991 Repl. Vol. 5B), which, as then in effect, included as unprofessional conduct "two or more acts or omissions which fail to meet generally accepted standards of medical practice." Pursuant to § 12–36–118(1), C.R.S. (1991 Repl. Vol. 5B), the inquiry panel assigned the matter to an Administrative Law Judge (ALJ) for a hearing.

The ALJ found that, after the patient's death, respondent had changed a note in the patient's record that estimated the patient's blood loss at 3,000 ccs to read 2,000 ccs by erasing the "3" and writing a "2" over it. The ALJ determined that erasing and writing over the entry in the patient's record was in violation of § 12–36–117(1)(p). In addition, the ALJ found that respondent had added a staff note to the patient's medical record after the patient's death and backdated the note to the date of death. However, the ALJ also found that many physicians backdate medical records and, therefore, de-

termined that the backdating of the record was not in violation of generally accepted standards of practice.

Having found only one violation of § 12–36–117(1)(p), the ALJ recommended that no discipline be imposed. The Board, however, on review, disagreed with the ALJ. It determined that backdating a medical record falls below generally accepted standards of medical practice and, finding a second violation, ordered the issuance of a letter of admonition to respondent.

Respondent appealed, and a division of this court reversed the Board's order, holding that the existence and nature of "generally accepted standards of medical practice" was an evidentiary fact. Thus, the court concluded, the Board was bound by the ALJ's finding. *Board of Medical Examiners v. McCroskey,* (Colo.App. No. 92CA1433, June 17, 1993) (not selected for official publication) *(McCroskey I).* On certiorari review, the supreme court disagreed, and held that the generally accepted standard of practice—the standard of care—was an ultimate fact upon which the Board could properly exercise its own judgment. *See McCroskey II, supra.*

The supreme court then remanded the case to this court with directions to address respondent's argument that medical record-keeping was not subject to regulation by the Board under the MPA. *McCroskey II, supra.* In turn, this court remanded the case to the Board for a determination by the ALJ whether respondent's backdating of medical records had occurred in the course of treatment of the patient. The remand order specified that the ALJ could take additional evidence if he deemed it necessary. *Board of Medical Examiners v. McCroskey,* (Colo. App. No. 92CA1433, Jan. 19, 1995) (not selected for official publication) *(McCroskey III ).*

On remand, the ALJ determined that the evidence taken at the initial hearing was sufficient. The ALJ also found that medical recordkeeping had been regulated by the provisions of the MPA at the time respondent backdated the note. Finally, the ALJ determined that the record entries had been made during the course of treatment of the patient. On review, the Board reaffirmed its original order issuing a letter of admonition to the respondent.

## I.

■ As a preliminary matter, respondent contends that the ALJ erred in refusing to conduct an evidentiary hearing upon remand. He argues that *McCroskey II* changed the standard of care and that he should, therefore, have the opportunity to relitigate that issue. We disagree.

■ The pronouncement of an appellate court on an issue in a case presented to it becomes the law of the case. *Super Valu Stores, Inc. v. District Court,* 906 P.2d 72 (Colo.1995). The law of the case doctrine applies to final decisions that affect the same parties in the same case. *Kuhn v. State,* 897 P.2d 792 (Colo.1995).

■ The doctrine of the law of the case protects litigants from the expenditure of time and money involved in the reargument of settled issues and ensures that lower courts follow the decisions of higher courts in subsequent proceedings. *People v. Roybal,* 672 P.2d 1003 (Colo.1983).

Here, the standard of care issue has already been decided. A reading of *McCroskey II* reveals that, after having determined the appropriate standard of care, the supreme court proceeded to review the Board's conclusion that respondent's backdating entries in the patient's medical records was a breach of that standard. The court found substantial evidence in the record to support the Board's conclusion, and specifically upheld it. *See McCroskey II, supra.*

Moreover, the supreme court's directions to this court expressly confined the scope of the proceedings on remand to the resolution of a single issue: whether recordkeeping is subject to regulation under the MPA. *See Musgrave v. Industrial Claim Appeals Office,* 762 P.2d 686 (Colo.App.1988) (When an appellate court remands a case with specific directions to enter a particular judgment or pursue a prescribed course, a lower court has no discretion except to comply with such directions.).

## II.

Thus, we address the issue on remand, which is respondent's contention that record-keeping does not constitute an act of medical practice subject to regulation under § 12–36–117(1)(p) of the MPA. For several reasons, we disagree.

■ A statute must be given effect according to the intent of the General Assembly, and to ascertain legislative intent, courts look first to the statutory language. *Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992).

■ Also, what constitutes the practice of medicine under the MPA must be construed in light of its stated purpose:

> The general assembly declares it to be in the interests of public health, safety, and welfare to enact laws regulating and controlling the practice of the healing arts to the end that the people shall be properly protected against unauthorized, unqualified, and improper practice of the healing arts in this state, and this article shall be construed in conformity with this declaration of purpose.

Section 12–36–102, C.R.S. (1991 Repl.Vol. 5B). Thus, the MPA must be construed to further the beneficial purpose of the protection of the public of this state. *See* § 2–4–201, C.R.S. (1980 Repl.Vol. 1B); *Colorado State Board of Medical Examiners v. Saddoris, supra.*

■ The appropriate construction of a statute is a question of law. *Colorado Division of Employment & Training v. Parkview Episcopal Hospital,* 725 P.2d 787 (Colo.1986). However, when the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited. The agency's determination is to be accepted if it is warranted by the record and has a reasonable basis in law. *Nicholas v. North Colorado Medical Center, Inc.,* 902 P.2d 462 (Colo.App.1995), *aff'd,* 914 P.2d 902 (Colo.1996).

Here, the ALJ, with record support, determined that:

> The preparation of medical records is part of patient care and a standard of medical practice exists with regard to patient records. Medical records serve the purposes of continuity of care from one provider to another, peer review, the education of younger physicians, the continuing education of all physicians, protecting the legal rights of patients and their families and, in cases such as this, determining cause of death.

The Board, in adopting the ALJ's findings, specifically concluded that recordkeeping constituted medical practice under § 12–32–117(1)(p) of the MPA.

■ Respondent does not quarrel with the Board's conclusion that recordkeeping is an integral part of medical practice. He asserts, however, that recordkeeping does not fall within the scope of § 12–36–117(1)(p), primarily because it is not explicitly referenced in the definition of the practice of medicine set forth in § 12–36–106(1), C.R.S. (1991 Repl.Vol. 5B & 1996 Cum.Supp.). Instead, in his view, § 12–36–106(1) defines medical practice as it applies in § 12–36–117(1)(p) to include only the actual treatment of patients. We do not agree.

By its title, § 12–36–106, C.R.S. (1991 Repl.Vol. 5B) defines "practice of medicine" and lists particular "exemptions from licensing requirements."

Specifically, § 12–36–106(1) provides that:

(1) For the purpose of this article 'practice of medicine' means:

(a) Holding out one's self to the public within this state as being able to diagnose, treat, prescribe for, palliate, or prevent any human disease, ailment, pain, injury, deformity, or physical or mental condition, whether by the use of drugs, surgery, manipulation, electricity, or any physical, mechanical, or other means whatsoever;

(b) Suggesting, recommending, prescribing, or administering any form of treatment, operation, or healing for the intended palliation, relief, or cure of any physical or mental disease, ailment, injury, condition, or defect of any person with the intention of receiving therefor, either di-

rectly or indirectly, any fee, gift, or compensation whatsoever;

(c) The maintenance of an office or other place for the purpose of examining or treating persons afflicted with disease, injury, or defect of body or mind;

(d) Using the title M.D., D.O., physician, surgeon, or any word or abbreviation to indicate or induce others to believe that one is licensed to practice medicine in this state and engaged in the diagnosis or treatment of persons afflicted with disease, injury, or defect of body or mind, except as otherwise expressly permitted by the laws of this state enacted relating to the practice of any limited field of the healing arts;

(e) Performing any kind of surgical operation upon a human being; or

(f) The practice of midwifery except:

(I) Services rendered by nurse-midwives licensed pursuant to article 38 of this title and certified by the American college of nurse-midwives; or

(II) Services rendered by a person properly registered as a direct-entry midwife and practicing in accordance with the provisions of article 37 of this title.

The remainder of § 12–36–106 then sets forth, in great detail, "exemptions from licensing requirements." *See* §§ 12–36–106(2) through 12–36–106(5), C.R.S. (1991 Repl.Vol. 5B) (listing more than 20 types of acts, practices, and services which do not constitute the practice of medicine, such as podiatry, Christian Science, acupuncture, physical therapy, and athletic training).

Respondent's argument—that only medical practices which directly involve the treatment of patients are covered by the MPA—implies that § 12–36–106(1) necessarily describes, within its terms, every aspect of medical practice. We disagree.

This subsection, read in context, is intended to define *who* must be licensed and regulated as a physician by the Board of Medical Examiners. In that regard, it sets forth those activities or services which, at a minimum, trigger regulation by the Board. The list is both general, *e.g.*, acts relating to diagnosis and treatment of patients, and specific, *e.g.*, "using the title M.D.," but, by its plain language, does not purport to be a comprehensive description of everything that physicians, *qua* physicians, do.

Accordingly, once a person engages in the "practice of medicine" and is not otherwise exempt pursuant to § 12–36–106, that person is subject to the authority of the Board and that person's conduct must conform with all of the statutory sections and administrative rules and regulations the Board implements. In particular, as pertinent here, the Board is charged with disciplining physicians for their unprofessional conduct. *See* § 12–36–118, C.R.S. (1991 Repl.Vol. 5B); *Colorado State Board of Medical Examiners v. District Court*, 138 Colo. 227, 331 P.2d 502 (1958). And, as noted, unprofessional conduct includes violations of the generally accepted standards of medical practice. *See* § 12–36–117(1)(p).

■ Thus, respondent's assertion to the contrary notwithstanding, although § 12–36–106 defines general aspects of the practice of medicine and, in that regard, provides significant guidance, nonetheless, it remains the Board's responsibility to determine whether specific acts fall within this broad scope of medical practice for the purpose of discipline under § 12–36–117(1)(p), subject to circumscribed appellate review. *See McCroskey II, supra,* 880 P.2d at 1195 ("In order to accomplish [its statutory] purpose, the Board must be accorded the authority to define the grounds for medical discipline on a case-by-case basis."). Moreover, the nature of medicine is such that the Board's expertise is vital to such a determination. *See McCroskey II, supra,* 880 P.2d at 1195 ("the Board has the advantage of technical and administrative expertise to decide issues involving the standard of medical practice").

Here, acting within its expertise, the Board concluded that recordkeeping is part of the practice of medicine under § 12–36–117(1)(p), and we have no reason to disagree. The Board's determinations are supported in the record, are well within its area of expertise, and have a reasonable basis in law. *See Nicholas v. North Colorado Medical Center, Inc., supra; see also Red Lion Broadcasting Co. v. Federal Communications Commis-*

*sion,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371, 384 (1969) (it is a "venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong"); *Ingram v. Cooper,* 698 P.2d 1314 (Colo.1985) (the interpretation of the statute by the agency charged with its enforcement is entitled to great deference).

In reaching this conclusion, we do not agree with respondent that a 1987 amendment to § 12–36–117(1)(p), which added the language "whether the two or more acts or omissions occurred during a single treatment of one patient, during the course of treatment of one patient, or during the treatment of more than one patient" to the statutory section, reflects an intent to narrow the definition of medical practice to include only conduct that occurs during the actual treatment of patients. *See* Colo. Sess. Laws 1987, ch. 84 at 511.

To the contrary, by this amendment the General Assembly simply sought to make explicit the Board's authority to find two or more substandard acts of medical practice in the course of treatment of a single patient. *See Colorado State Board of Medical Examiners v. Slonim,* 844 P.2d 1207 (Colo.App. 1992); *cf.* § 12–36–117(1)(p), C.R.S. (1996 Cum.Supp.) (now reading, in its entirety: "any act or omission which fails to meet generally accepted standards of medical practice").

■ Nor do we agree with respondent's argument that § 12–36–117(1)(p) cannot be read to include recordkeeping because a section on recordkeeping was added after the incidents at issue here.

In 1989, unprofessional conduct under the MPA was amended to include:

Falsifying or repeatedly making incorrect essential entries or repeatedly failing to make essential entries on patient records.

Section 12–36–117(1)(cc), C.R.S. (1991 Repl. Vol. 5B). Respondent argues that the proscription on specific recordkeeping practices was intended to be the sole statutory section governing recordkeeping violations, and that in its specificity it precludes regulation of recordkeeping under § 12–36–117(1)(p). *See Houdek v. Mobil Oil Corp.,* 879 P.2d 417 (Colo.App.1994), *cert. denied,* 513 U.S. 1150,

115 S.Ct. 1100, 130 L.Ed.2d 1068 (1995) (In general, if two statutes conflict, the provision of the specific will control over the general.).

■ However, statutes must be construed as a whole to give consistent, harmonious and sensible effect to all their parts. *Colorado State Board of Medical Examiners v. Saddoris, supra.* And, if separate clauses within a statute may be harmonized by one construction but would be antagonistic under a different construction, a construction which results in harmony rather than inconsistency should be adopted. *City of Ouray v. Olin,* 761 P.2d 784 (Colo.1988).

Here, § 12–36–117(1)(p) is designed to give the Board the authority to regulate the overall practice of medicine, including the authority to impose discipline for recordkeeping violations that violate the general standard of care. On the other hand, § 12–36–117(1)(cc) governs only a narrow class of recordkeeping violations characterized by both falsity and repetition. The two address different kinds of recordkeeping violations and we will not read § 12–36–117(1)(cc) to defeat the purpose of § 12–36–117(1)(p). *Cf. Colorado State Board of Dental Examiners v. Micheli,* 928 P.2d 839 (Colo.App. 1996) (interpreting similar provisions of Dental Practice Act).

Moreover, we note that § 12–36–117(1)(cc) was one of many statutory sections enacted specifically to combat health insurance fraud. It further reflects the intent of the General Assembly to supplement, not narrow, § 12–36–117(1)(p). *See* Colo. Sess. Laws 1989, ch. 111 at 669.

■ Finally, we reject respondent's argument that, because the patient was deceased at the time respondent altered the records, his conduct falls outside of the practice of medicine. As the Board concluded, the preparation of medical records is integral to the practice of medicine, and all of the purposes of medical records, with the exception of continuity of actual care, survive the patient's death.

The order is affirmed.

NEY and CASEBOLT, JJ., concur.