2013 COA 132

**Fabian SEBASTIAN, Plaintiff–Appellant,**

**v.**

**DOUGLAS COUNTY, COLORADO; Douglas County Sheriff's Office; David A. Weaver, Douglas County Sheriff; and Greg A. Black, Douglas County Sheriff's Deputy, Defendants–Appellees.**

**Court of Appeals No. 12CA1112**

Colorado Court of Appeals,
Div. III.

Announced September 12, 2013

Rehearing Denied Oct. 10, 2013

---

Douglas County District Court No. 09CV1954, Honorable Richard B. Caschette, Judge

The Law Offices of Sandomire & Schwartz, Andrew Sandomire, Eric V. Field, Denver, Colorado, for Plaintiff–Appellant

Lance J. Ingalls, County Attorney, Kelly Dunnaway, Deputy County Attorney, Castle Rock, Colorado, for Defendants–Appellees

Opinion by JUDGE DAILEY

¶ 1 Plaintiff, Fabian Sebastian, appeals from the district court's order, entered on remand from this court, denying his C.R.C. P. 60(b)(1) motion to set aside the court's judgment entered in favor of defendants, Douglas County, Colorado; Douglas County Sherriff's Office; David A. Weaver, Douglas County Sheriff; and Greg A. Black, Douglas County Sheriff's Deputy. We affirm.

### I. Background

¶ 2 Sebastian was a passenger in the back seat of a vehicle stopped by sheriff's deputies soon after it left the scene of a reported gang fight involving guns. Upon being stopped, two of the car's passengers fled, leaving a door open behind them. According to the amended complaint filed by Sebastian in this case,

- as the two went over a nearby fence, Deputy Black, without any preliminary warning, directed his K–9 police dog to give chase;
- the dog jumped from the deputy's vehicle and ran to the fence where it stopped;
- the dog turned, saw Sebastian seated in the back seat of the car with his hands up, entered the car through the open door, and attacked him; and,
- the assault continued until Black and two other deputies dragged the dog off Sebastian.

¶ 3 Based on these allegations, Sebastian asserted that he was entitled to recover damages because the attack violated rights guaranteed him by the Fourth and Fourteenth

Amendments to the United States Constitution, Deputy Black was negligent, and his conduct was outrageous.

¶ 4 Pursuant to C.R.C.P. 12(b)(5), defendants moved to dismiss the action for failure to state a claim upon which relief could be granted. In this regard, they asserted that (1) Sebastian had not set forth facts which, if true, would warrant relief under 42 U.S.C. § 1983; (2) Sebastian's 42 U.S.C. § 1983 constitutional claims were, in any event, barred by the doctrine of qualified immunity; and (3) Sebastian's state law (i.e., negligence and outrageous conduct) claims were barred by the Colorado Governmental Immunity Act (CGIA).

¶ 5 Sebastian filed, and the court granted, an unopposed motion for an extension of time in which to respond to the motion to dismiss, although it was unclear whether the extension was for one or two weeks. In any event, Sebastian failed to respond within either period. He filed his response five calendar days after the expiration of the two-week period—one day after the district court had dismissed his complaint pursuant to C.R.C.P. 121 § 1–15(3) (failure to file a responsive brief may be considered a confession of the motion).

¶ 6 Subsequently, Sebastian filed a motion to set aside the judgment of dismissal under C.R.C.P. 60(b)(1), asserting that (1) he missed the filing deadline due to his attorney's excusable error in interpreting C.R.C.P. 6(e) as allowing additional time in which to respond beyond the expiration of the two-week period, (2) he had a meritorious defense to defendants' motion to dismiss, and (3) no prejudice to Deputy Black would result from granting the motion, but Sebastian would be prejudiced if it were not granted. The district court denied Sebastian's motion.

¶ 7 On appeal, a division of this court vacated the district court's order denying Sebastian's C.R.C.P. 60(b)(1) motion and remanded the matter for further consideration. See Sebastian v. Douglas Cnty., 2011 WL 1420290 (Colo.App. No. 10CA0660, Apr. 14, 2011) (not published pursuant to C.A.R. 35(f)).

¶ 8 In reaching its decision, the division agreed with the district court that the cause of Sebastian's belated response—counsel's misinterpretation of the rules—was not excusable. However, relying on *Goodman Associates, LLC v. WP Mountain Properties LLC*, 222 P.3d 310 (Colo.2010), the division concluded that that fact alone was not dispositive; it was just part of a fundamentally broader, equity based determination. Under *Goodman*, the division noted, a court had to consider not only (1) whether the neglect that resulted in the entry of the judgment was excusable, but also (2) whether the moving party has alleged a meritorious claim or defense, and (3) whether relief from the challenged judgment would be consistent with considerations of equity. *See Goodman*, 222 P.3d at 319, 321.

¶ 9 Because the district court had not considered the latter two factors, the division vacated the district court's order and remanded the matter for reconsideration and entry of new findings and conclusions in conformity with the requirements of *Goodman*. *Sebastian*, slip op. at 9–11.

¶ 10 On remand, after conducting a hearing, the district court issued a written order once again denying Sebastian's C.R.C.P. 60(b)(1) motion.

## II. Analysis

¶ 11 On appeal, Sebastian contends that the district court erred in denying his rule 60(b)(1) motion. We disagree.

¶ 12 A district court's decision to grant or deny relief under C.R.C.P. 60(b)(1) is generally reviewed under an abuse of discretion standard. *See Goodman*, 222 P.3d at 314. A court abuses its discretion when its decision rests on a misunderstanding or misapplication of the law, *Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 458 (Colo.App.2003), or when its decision is manifestly arbitrary, unreasonable, or unfair. *Goodman*, 222 P.3d at 314.

¶ 13 To set aside a judgment under C.R.C.P. 60(b), the movant—here, Sebastian—bears the burden of establishing by clear and convincing evidence that the motion

should be granted. *Goodman,* 222 P.3d at 315.

¶ 14 The present case involves the application and balancing of the three factors identified in *Goodman.* Because the resolution of disputes on their merits is favored, the *Goodman* factors should be "liberally construed in favor of the movant, especially when the motion is promptly made." *Goodman,* 222 P.3d at 320; *see also Gumaer v. Bell,* 51 Colo. 473, 482–83, 119 P. 681, 684 (1911)("The exercise of the mere discretion of the court ought to tend in a reasonable degree, at least, to bring about a judgment on the very merits of the case; and, when the circumstances are such as to lead the court to hesitate upon the motion to open the default, it is better, as a general rule, that the doubt should be resolved in favor of the application.") (quoting *Watson v. San Francisco & Humboldt Bay R.R. Co.,* 41 Cal. 17, 20–21 (1871)).

¶ 15 Sebastian concedes—as he must, under the prior decision of the division of this court – that, under the first*Goodman* factor, his neglect was not excusable. Nonetheless, he argues, he is entitled to relief upon a proper consideration of the other two factors.[1] It is to those two factors, and the district court's balancing of them, that we now turn.

### A. The Second Goodman Factor: The Presence of a Meritorious Claim

¶ 16 Sebastian has conceded that his state law tort claims are, as the defendants argued, barred by the CGIA. He asserts, however, that he has alleged meritorious 42 U.S.C. § 1983 claims.

¶ 17 In his amended complaint, Sebastian asserted that, by directing his K–9 dog to subdue the fleeing occupants of the car without distinguishing between those who were fleeing and those remaining in the car, Deputy Black employed excessive force in effecting or maintaining the seizure of his person

in violation of the Fourth Amendment to the federal constitution.

¶ 18 The district court found that the allegations did not state a claim under 42 U.S.C. § 1983 because

- to be an actionable Fourth Amendment violation, an aggrieved person's detention must be accomplished purposefully, rather than accidentally, and

- Sebastian's allegations raised, at most, a negligent act, and, as such, were actionable, if at all, only under state law.

¶ 19 "To state a claim for relief under [42 U.S.C.] § 1983, a complaint must allege that some person deprived the plaintiff of a right, privilege, or immunity established by the constitution or laws of the United States and that such person's actions were under color of state law." *Cnty. of Adams v. Hibbard,* 918 P.2d 212 (Colo.1996).

¶ 20 In the analogous, fourteenth amendment context, the United States Supreme Court has agreed that the word " 'deprive' ... connote[s] more than a negligent act." *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). Consistent with this, courts have recognized that, to be successful, a section 1983 claimant "must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil,* 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982)).

¶ 21 Consequently, in a Fourth Amendment excessive force case, a section 1983 plaintiff must show, as a threshold matter, that he or she has been "seiz[ed]" by "means intentionally applied" by a government actor. *Brower v. Cnty. of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.... This is implicit

---

1. Contrary to defendants' assertion, a denial of relief cannot be upheld based on the first, or [in]excusable neglect, factor alone, because (1) in *Goodman,* the supreme court held "that each factor *must be weighed and considered together* as a part of the question whether" relief is warrant-

ed under C.R.C.P. 60(b)(1), 222 P.3d at 320 (emphasis added); and (2) the division would have upheld the denial of the motion on this basis in Sebastian's prior appeal, without need of any further proceedings.

in the word 'seizure', which can hardly be applied to an unknowing act."); *see also Apodaca v. Rio Arriba Cnty. Sheriff's Dep't*, 905 F.2d 1445, 1447 (10th Cir.1990) ("[O]ne seized unintentionally does not have a constitutional complaint."); *Koetter v. Davies*, 2010 WL 3791482, at *5 (D.Utah No. 2:07–CV–724 TS, Sept. 22, 2010) (unpublished order) ("[T]he Fourth Amendment prohibition on excessive force during arrest does not apply to unintentional or incidental applications of force.").

■■ ¶ 22 If, but only if, the plaintiff can make the requisite showing of an intentional seizure, then the inquiry turns to whether the force used by law enforcement officials was "excessive." Whether a law enforcement officer used excessive force during an arrest or other type of investigatory stop is assessed under a Fourth Amendment reasonableness standard, (1) taking into consideration the totality of the circumstances, including such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight; and (2) judged from the perspective of an objectively reasonable officer on the scene "in light of the facts and circumstances confronting them, without regard to [his] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 395–97, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989); *see Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir.2008) (discussing first part of excessive force analysis); *see also Thomson v. Salt Lake Cnty.*, 584 F.3d 1304 (10th Cir.2009) (discussing second part of excessive force analysis).[2]

¶ 23 In this case, the district court concluded that Sebastian's allegations would not support a finding of the threshold issue, that is, an intentional seizure.

■ ¶ 24 In analyzing this issue, it is important to remember that an actionable seizure may occur "even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself

must be willful." *Brower*, 489 U.S. at 596, 109 S.Ct. at 1381 (citation omitted). With respect to the use of police dogs,

> [o]nce deployed, a police-dog is generally unable to discriminate between suspects and innocent parties and is generally trained to bite whomever it encounters, facts suggesting the officer's intention to seize whomever the dog ultimately does encounter.

*Gangstee v. Cnty. of Sacramento*, 2012 WL 112650, at *5 (E.D.Cal. No. S10–1004–KJM–GGH, Jan. 12, 2012) (unpublished order).

¶ 25 This principle is not, however, without limitation. In another case, a court described the principle thusly:

> when officers intentionally deploy a dog, which is incapable of discriminating suspects from bystanders and is trained to bite whoever it encounters, *the officers effectively intend to seize anyone in the space where the dog was deployed.*

*Rodriguez v. City of Fresno*, 819 F.Supp.2d 937, 947 (E.D.Cal.2011) (emphasis added).

¶ 26 In *Vathekan v. Prince George's County*, 154 F.3d 173, 176 (4th Cir.1998), a police officer, suspecting a burglar was within a house, released his dog into the house, with the command "Find him!" The dog found, instead, the owner of the house and bit her. The circuit court concluded that, although the officer did not mean for the dog to bite an innocent person, "[b]y giving the command "Find him!", [the officer] intended the dog to find [and bite] anyone *in the house*." *Id.* at 178 (emphasis added).

¶ 27 Similarly, in *Brown v. Whitman*, 651 F.Supp.2d 1216, 1225 (D.Colo.2009), the innocent owner of property was "seized," because, "even though [she] was not the intended suspect, her freedom to leave was terminated by [the officer's] intentional release of his police dog into her yard." *See also Kopf v. Wing*, 942 F.2d 265, 266 (4th Cir.1991) (officers released dog on suspects hiding in a specific area behind a shed).

¶ 28 In the present case, Deputy Black released the dog, intending for it to chase the

---

**2.** Contrasting the "seizure" and the "excessive force" components of a section 1983 Fourth Amendment excessive force claim, it is obvious

that an officer's intent is relevant only to the former, and not the latter, component.

two passengers who fled over the fence.[3] From the allegations in the complaint, it is apparent that the car in which Sebastian was sitting was not located in the direction to which Black had released the dog. This follows, because, according to the complaint, the dog had to turn to see Sebastian in the car. Because Sebastian was not in the direction (or "space") to which the dog had been released, nor was he among the fleeing suspects Black directed the dog to chase, he did not fall within a class of people Black would expect the dog to encounter and bite.

¶ 29 Consequently, Sebastian was not the intended object of the K9's release, and the dog's spontaneous deviation from the area of the fence to bite Sebastian in the car was not actionable as a "seizure" under section 1983. *See Brower*, 489 U.S. at 596, 109 S.Ct. at 1381 ("[T]he Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct.") (citation omitted); *Dennis v. Town of Loudon*, 2012 WL 4324932, at *4–5 (D.N.H. No. 11–CV–302–JL, Sept. 20, 2012) (unpublished order) ("[W]here, as here, a trained police dog spontaneously attacks an individual, courts have concluded that there is no Fourth Amendment seizure."); *cf. Neal v. Melton*, 453 Fed.Appx. 572, 577–78 (6th Cir. 2011) (officer's failure to secure dog during traffic stop, allowing dog to get out of police car and jump into stopped car, scratching child in the back seat, was not the kind of intentional or knowing contact sufficient to implicate the Fourth Amendment).

¶ 30 We acknowledge that the deployment of a K–9 police dog carries with it the risk of seriously injuring others. Consequently, officers should not lightly deploy one. That said, there was no actionable "seizure" here, and, thus, we need not address whether the use of the dog, without a warning, constituted the use of excessive force.

### B. The Third Goodman Factor: Equitable Considerations

¶ 31 In the prior appeal in this case, the division discussed the type of equitable con-siderations that should be considered in deciding whether to grant or deny a Rule 60(b)(1) motion:

the promptness of the moving party in filing the C.R.C.P. 60(b) motion; any detrimental reliance by the opposing party on the order or judgment of dismissal; any prejudice to the opposing party if the motion were to be granted, including any impairment of that party's ability to adduce proof at trial in defense of the claim; and the prejudice to the moving party that would result from denying the motion.

*Sebastian*, slip op. at 8–9.

¶ 32 However, the division noted that the district court had not

consider[ed] or comment[ed] on the fact that the dismissal occurred less than two months after service, and just over one month after defendants first appeared; that just over three weeks after entry of the order of dismissal, plaintiff filed a lengthy motion to set it aside; that defendants asserted no reliance on the order; that defendants showed no resulting prejudice to their ability to present their defense; or that plaintiff would be precluded from presenting the merits of his case if the court denied the motion.

*Id.* at 9.

¶ 33 On remand, the district court made no findings regarding many of the considerations identified by the division. It focused, instead, on the following: Sebastian had missed the deadline for filing his response to the motion to dismiss; Sebastian had missed a deadline in the earlier appeal; and the lengthy period between the underlying events in the case and the court's ultimate ruling on the Rule 60 motion had a tendency to cause prejudice because "witnesses move and memories fade."

¶ 34 In the first instance, the district court should have considered the specific matters identified in the earlier appeal, in compliance with the division's mandate to conduct further proceedings "consistent with the views expressed" in its opinion. *See Powell v.*

---

**3.** At the hearing on remand, Sebastian conceded that he was not "contest[ing]" that it was appropriate to use the canine against the individuals running away." They were, after all, fleeing felony suspects.

*Hart*, 854 P.2d 1266, 1267 (Colo.1993)(district court must comply with mandate of appellate court); *Colo. State Bd. of Med. Exam'rs v. McCroskey*, 940 P.2d 1044, 1046 (Colo.App. 1996) (district court must comply with specific directions of an appellate court mandate on remand).

¶ 35 In the second instance, Sebastian's missing an appellate deadline was irrelevant to the issues before the court; and, Sebastian cannot be faulted for the length of time it took to vindicate his appellate rights in the first appeal and return the case for further proceedings to the district court.

¶ 36 We acknowledge, as the district court stated, that "there are certain rules which must be followed in order for the Court to fairly and efficiently manage its tremendous docket." However, if the circumstances were different—in particular, if Sebastian had asserted a meritorious claim—we might well have been inclined to reverse the district court' order and allow him his day in court. As it is, where counsel's neglect in failing to timely respond to the motion to dismiss was inexcusable and Sebastian had no meritorious claim, we cannot conclude that the district court's decision refusing to vacate the judgment of dismissal was manifestly arbitrary, unreasonable, or unfair, and, thus, an abuse of discretion. *Cf.Goodman*, 222 P.3d at 320. ("[I]t is difficult to imagine a case in which no meritorious defense exists but the circumstances otherwise would justify setting aside a default judgment.").

¶ 37 The order is affirmed.

JUDGE GABRIEL and JUDGE ROTHENBERG * concur.